UNITED STATES of America, Appellee,

v.

Cynthia MILES, Defendant–Appellant.

No. 361, Docket 89–1261.

United States Court of Appeals,
Second Circuit.

Argued Nov. 8, 1989.

Decided Nov. 9, 1989.

Paul J. McAllister, New York City (Kenny, McAllister & Roland, New York City, of counsel), for defendant-appellant.

Patrick J. Fitzgerald, Asst. U.S. Atty., S.D.N.Y., New York City (David E. Brodsky, Asst. U.S. Atty., Benito Romano, U.S. Atty., S.D.N.Y., New York City, of counsel), for appellee.

Before KAUFMAN, TIMBERS and WINTER, Circuit Judges.

PER CURIAM:

Appellant, having been convicted on conspiracy and substantive counts of drug possession with intent to distribute, first challenges the district court's denial of her motion to suppress evidence seized from her apartment after a warrantless entry. The denial was based on the district court's conclusion that exigent circumstances justified the entry.

The test for determining whether a warrantless entry was justified by exigent circumstances is an objective one. *See United States v. Zabare*, 871 F.2d 282, 291 (2d Cir.), *cert. denied*, —— U.S. ——, 110 S.Ct. 161, 107 L.Ed.2d 119 (1989). The existence of sufficiently exigent circumstances "turns upon whether in light of all the facts of the particular case there was an 'urgent need' that 'justif[ies]' a warrantless entry" into appellant's apartment. *United States v. Martinez–Gonzalez*, 686 F.2d 93, 100 (2d Cir.1982) (quoting *Dorman v. United States*, 435 F.2d 385, 391 (1970) (rehearing en banc)); *see also United States v. Zabare*, 871 F.2d at 290. We believe that sufficient urgency existed in this case to justify the entry and search.

James Joy, an informant for the Drug Enforcement Administration ("DEA"), had arranged a cocaine buy in Miles' apartment. The seller was one Gounod Rodriguez, with Miles acting as a broker. Joy was present when a kilogram of cocaine was delivered by Rodriguez to Miles' apartment. Joy so notified DEA agents outside the building by beeper. Joy then left the apartment after telling Miles and Rodriguez that he was going to get money for the buy.

■ We believe that the agents' concern that Miles might destroy or remove the cocaine while a warrant was being obtained was objectively justified. From their vantage point, the agents were able to observe only the front door to Miles' apartment building and not the door to her apartment. They did not know whether there was a rear door. Joy had left the apartment ostensibly to retrieve money to purchase the cocaine and was thus expected to return shortly. Joy's absence for an extended period of time while the agents sought a warrant, *see United States v. Cattouse*, 846 F.2d 144, 147–48 (2d Cir.), *cert. denied*, —— U.S. ——, 109 S.Ct. 316, 102 L.Ed.2d 335 (1988) (twenty to thirty minutes inadequate for obtaining a warrant), would create a substantial risk of alerting Miles and Rodriguez to the imminence of an arrest. If alerted, they might then destroy the cocaine (perhaps by flushing it down a toilet) or conceal it elsewhere in the building. This latter risk was not hypothetical because Miles' alternate cocaine supplier lived in the same apartment building. The possibility of an unknown exit also had to be considered.

Taking into account the gravity of the crime, *see id.* at 146, the clear showing of probable cause, *see id.*, and the likelihood that evidence might be destroyed or removed before a warrant could be obtained, *United States v. Gallo–Roman*, 816 F.2d 76, 79 (2d Cir.1987), sufficiently exigent circumstances existed to justify the search.

■ The DEA agents were not required to obtain a warrant for Miles' apartment prior to the events immediately preceding her arrest. It is true that Joy had provided Miles' name and address and had advised the DEA that a one-kilogram cocaine deal had been arranged with Miles in her apartment. Also, the DEA agents' monitoring of a phone call between Joy and Miles provided evidence that Miles was willing to make the narcotics deal. Nevertheless, law enforcement officers may delay obtaining a warrant until events have "proceeded to a point where the agents could be reasonably certain that the evidence would ultimately support a conviction." *United States v. Montiell*, 526 F.2d 1008, 1010 n. 1 (2d Cir.1975). Moreover, "even if the agents might have been able to obtain a warrant earlier in the day, their failure to do so at the first opportunity does not bar them from acting on an exigency that arises later." *Cattouse*, 846 F.2d at 147; *see also Cardwell v. Lewis*, 417 U.S. 583, 595–96, 94 S.Ct. 2464, 2471–72, 41 L.Ed.2d 325 (1974).

Appellant also claims that the district court unreasonably limited cross-examination of Joy, the government's principal witness, in not allowing questions regarding a prior misdemeanor offense and a sham marriage. Judge Leisure's ruling regarding the misdemeanor conviction was made before Joy's direct testimony, and he explicitly instructed appellant's trial counsel that it was "for present purposes" only and that the objection should be renewed after the direct testimony. The ruling was thus not final, and defense counsel's failure to renew the objection after the direct testimony waived this claim.

With regard to the sham marriage, appellant has not demonstrated that the district court's refusal to permit cross-examination was an abuse of discretion. The scope and extent of cross-examination lie within the trial court's discretion, *see United States v. Tutino*, 883 F.2d 1125, 1140 (2d Cir.1989), and a trial judge's evidentiary rulings will not be disturbed unless the judge acted "arbitrarily or irrationally," *id.; United States v. Blanco*, 861 F.2d 773, 781 (2d Cir.1988), *cert. denied,* — U.S. ——, 109 S.Ct. 1139, 103 L.Ed.2d 200 (1989). We see no such arbitrary or irrational conduct here. Moreover, even if the ruling was in error, it was harmless. Joy was cross-examined as to his own criminal sales of drugs amounting to over $700,000 on which he paid no taxes and as to his status as a paid DEA informant. The exclusion of evidence regarding a sham marriage three years before was thus hardly a scale-tipper.

Appellant's claim that an allegedly improper remark by the prosecutor during the summation requires reversal is without merit. *See Tutino*, 883 F.2d at 1136–37 (criminal conviction will not be overturned lightly on basis of inappropriate statements in summation).

Affirmed.