88 F.3d 136
 1996 Copr.L.Dec. P 27,536, 39 U.S.P.Q.2d 1367
 Eddie PALMIERI, Plaintiff-Appellant,
v.
John DEFARIA; Rafael Padilla; Randy Barlow; Teddy Mulet;
Mike Scaglione and Robert Rodriguez, Defendants,
Gloria Estefan; Sony Music Entertainment Inc.; Epic
Records, a division of Sony Music Entertainment
Inc., et al., Defendants-Appellees.
 No. 1403, Docket 95-7660.
 United States Court of Appeals,
Second Circuit.
 Argued May 6, 1996.
Decided July 5, 1996.
 
 Brian D. Caplan, New York City (Goodkind Labaton Rudoff & Sucharow LLP, Mark S. Arisohn, Jonathan Gardner, of Counsel), for Plaintiff-Appellant.
 L. Peter Parcher, New York City (Parcher & Hayes, P.C., Jonathan Liebman, Orin S. Snyder, Jeffrey I. Carton, of Counsel), for Defendants-Appellees.
 Before FEINBERG, CABRANES and PARKER, Circuit Judges.
 FEINBERG, Circuit Judge:
 
 
 1
 Plaintiff Eddie Palmieri appeals from a judgment of dismissal entered in the United States District Court for the Southern District of New York, Richard Owen, J., in favor of defendants-appellees, the singer-composer Gloria Estefan and the entertainment companies that distribute Estefan's music. Ultimately Palmieri seeks review of the district court's in limine ruling excluding certain evidence. For the reasons stated below, we decline to review the merits of that ruling.
 
 I. Background
 
 2
 In May 1991, Palmieri filed his complaint claiming copyright infringement in violation of 17 U.S.C. § 106. Palmieri is a co-owner of the copyright in the song "Paginas De Mujer." Palmieri alleged that Estefan's song "Oye Mi Canto" is substantially similar to "Paginas De Mujer," and he sought to prove that prior to composing "Oye Mi Canto," Estefan had access to "Paginas De Mujer."
 
 
 3
 In May 1995, defendants moved in limine "to exclude certain areas of [Palmieri's] proposed evidence" on the issue of Estefan's access to Palmieri's song. In an unpublished Memorandum Opinion, dated June 2, 1995, Judge Owen granted the motion in part and denied it in part. The judge determined that Palmieri's proposed evidence of radio air play of his song, including royalty statements based on estimated air play, was insufficient as a matter of law to infer access. Judge Owen also held that (1) evidence that two associates of defendant Gloria Estefan possessed a recording of Palmieri's song and (2) testimony of Jose Estefan, Gloria's brother-in-law, that the song was played at Estefan family gatherings, were not sufficiently probative of access.
 
 
 4
 Additionally, defendants sought to exclude Palmieri's evidence that approximately 40,000 copies of "Paginas de Mujer" were sold nationwide prior to the time "Oye Mi Canto" was composed, and at least 2,000 copies were sold in the Miami area, where Gloria Estefan lives. Judge Owen was "unable to assess the propriety of ... admissibility" of this evidence on the record before him. On this issue, he "den[ied] the motion in limine and await[ed] the proffer of evidence, subject to a possible motion to strike." Thus, the district court expressly preserved for trial, albeit conditionally, Palmieri's evidence of access based on the alleged "wide dissemination" of his song through record sales.
 
 
 5
 Palmieri was also prepared to offer evidence that he was a leader in the development of salsa music and had won five Grammy awards, and that Cheo Feliciano (Palmieri's lead singer) was extremely popular. He further alleged that Emilio Estefan, Gloria's husband, had stated that he and his wife were both "big fans" of Palmieri's music. Palmieri argued, based on Fisher-Price Toys v. My-Toy Co., 385 F.Supp. 218, 220 (S.D.N.Y.1974), that Gloria Estefan's professional interest in salsa music, Palmieri's status in the field and the availability of his song allowed an inference that Estefan had a reasonable opportunity to copy his song. Judge Owen did not rule on the admissibility of this additional evidence.
 
 
 6
 The judge filed his opinion on June 2, 1995. On June 5, the parties appeared for trial. At that time, Palmieri's counsel requested a stay of trial so that Palmieri could take an interlocutory appeal, pursuant to 28 U.S.C. § 1292(b), of the court's evidentiary ruling three days earlier. This request was denied. Palmieri's counsel then apparently attempted to have the judge rule against him and exclude Palmieri's evidence of record sales. Presumably Palmieri's strategy at this point was to have the court exclude all of his evidence, determine that his evidence was insufficient as a matter of law and enter a final appealable judgment against him. This request was denied because the evidence of record sales alone may have been sufficient to sustain a jury finding of access. The district court explained as follows:
 
 
 7
 If I heard what your total proof was on record sales you might make it.... The record on this is sketchy. We haven't had the witnesses on the stand. We don't know who sold what, where. We haven't heard anybody cross-examined. I am sympathetic to your posture, but I don't want the Court to be put in the position of making a ruling on the record that I can not say would support either way, which is exactly why I came out saying that one, give it a shot.
 
 
 8
 Palmieri's counsel informed the court that Palmieri still felt he had insufficient evidence to proceed to trial and would permit judgment to be entered against him. He did not specifically ask for a voluntary dismissal under Fed.R.Civ.P. 41(a), but he did indicate that he wanted a final judgment entered so that he could appeal the in limine evidentiary ruling. Defendants stated that they would not consent to a voluntary dismissal. However, they encouraged the court to enter a final judgment against Palmieri, although they did not formally move for an involuntary dismissal under Fed.R.Civ.P. 41(b) based on Palmieri's failure to prosecute.
 
 The following colloquy ensued:
 
 9
 THE COURT: Again, though, let me be sure that the foundation for it is there.... I did not in effect make a ruling that you do or do not have other evidence that is sufficient. All I did was rule on what was challenged by those motions, and reached the rulings that I did and the opinion was filed. What steps go forward from that under the circumstances, as you've now put it on the record, that obviously is for you as a party to determine.
 
 
 10
 ...
 
 
 11
 [PALMIERI'S COUNSEL]: And we intend to seek appellate review of [the in limine ruling], and as we discussed in chambers, rather than permit an interlocutory appeal, your Honor said that we have the right to enter judgment here and take an appeal from the ruling.
 
 
 12
 THE COURT: No, I didn't say that. The problem is we are here ready for trial. There is a jury panel waiting across the street from whose members the jury would be selected. We are ready for trial, and in effect, I take it the defendant is on record as being ready for trial, correct?
 
 
 13
 [DEFENDANTS' COUNSEL]: We're ready, your Honor.
 
 
 14
 THE COURT: And the plaintiff is saying, given those rulings and your assessment of what's left over, you do not believe you could prevail and, therefore, you are so announcing to the Court that you are not ready. Therefore, given the fact that the case is otherwise ready, I am in the position of having to say, since you don't proceed, I find for the defendant. That's what it amounts to.
 
 
 15
 [PALMIERI'S COUNSEL]: As long as it's understood that we're not waiving our appellate rights, your Honor.
 
 
 16
 THE COURT: I understand that whatever appellate rights you have you continue to possess, but you possess it against a certain framework, which is that we're here ready for trial, and you say that rulings that I made, in your view, mean that you couldn't prevail, and, therefore, you do not want to go forward.... Nevertheless, the fact is we're here ready to take whatever proof you want to offer, and you are saying, I do not choose to go forward, given my assessment of the case.
 
 
 17
 The judge then entered a judgment of dismissal against Palmieri, stating in the judgment that "Defendants announced themselves ready for trial. Plaintiff declined to proceed to trial."
 
 
 18
 Palmieri then appealed to this court.
 
 II. Discussion
 
 19
 Palmieri's notice of appeal indicates that he is appealing from the judgment of dismissal. However, he states in his brief to us that the issue on this appeal is "[w]hether ... the District Court improperly excluded, prior to trial, individual items of circumstantial evidence of access...." Defendants contend that because Palmieri's claim was dismissed for failure to prosecute, the dismissal may only be reviewed for an abuse of discretion, and we may not substantively review the in limine evidentiary ruling. Palmieri responds that we may review that ruling on the merits because the judgment was a voluntary dismissal, which he solicited after the in limine evidentiary ruling effectively dismissed his case.
 
 
 20
 This appeal illustrates the problems that arise when a party tries to evade the final judgment rule. In the federal system, parties may appeal ordinarily only from "final decisions of the district courts." 28 U.S.C. § 1291. An in limine evidentiary ruling does not constitute a final ruling on admissibility, Luce v. United States, 469 U.S. 38, 41-42, 105 S.Ct. 460, 463-64, 83 L.Ed.2d 443 (1984), and an appeal of such an order is barred. Coursen v. A.H. Robins Co., 764 F.2d 1329, 1342 (9th Cir.), corrected by 773 F.2d 1049 (9th Cir.1985). The rationale underlying this rule was stated in Luce, in which the Supreme Court held that a defendant must testify at trial in order to appeal an in limine ruling allowing the use of impeachment testimony:
 
 
 21
 Any possible harm flowing from a district court's in limine ruling ... is wholly speculative. The ruling is subject to change when the case unfolds, particularly if the actual testimony differs from what was contained in the ... proffer. Indeed even if nothing unexpected happens at trial, the district judge is free, in the exercise of sound judicial discretion, to alter a previous in limine ruling.
 
 
 22
 469 U.S. at 41-42, 105 S.Ct. at 463-64; see also Coursen, 764 F.2d at 1342. The rule is a practical one. There is no reason to spend scarce judicial resources reviewing a decision that may be changed due to developments at trial.
 
 
 23
 In this case, after the district court refused to certify an interlocutory appeal of its in limine evidentiary ruling, Palmieri sought to obtain appellate review of the ruling by having a judgment entered against him. However, as we recently stated in Chappelle v. Beacon Communications, 84 F.3d 652, 654-55 (2d Cir.1996):
 
 
 24
 If a litigant could refuse to proceed whenever a trial judge ruled against him, wait for the court to enter a dismissal [pursuant to Rule 41], and then obtain review of the judge's interlocutory decision, the policy against piecemeal litigation and review would be severely weakened. This procedural technique would in effect provide a means to avoid the finality rule embodied in 28 U.S.C. § 1291.
 
 
 25
 (quoting Dannenberg v. Software Toolworks, 16 F.3d 1073, 1076-77 (9th Cir.1994)) (internal quotations omitted, brackets added by Chappelle ).
 
 
 26
 With these general principles in mind, we turn to the propriety of the district court's judgment dismissing the complaint. We note that it is somewhat unclear whether the district court intended to grant a motion by Palmieri for a voluntary dismissal pursuant to Fed.R.Civ.P. 41(a) or dismissed this case for failure to prosecute. As will become clear, the analysis in each situation leads to the same result.
 
 A. Voluntary dismissal
 
 27
 Palmieri argues that the judgment in this case was a voluntary dismissal, apparently in the belief that his willingness to dismiss strengthens his argument that we should review the evidentiary ruling on the merits. We disagree. According to Rule 41(a)(2), a voluntary dismissal is without prejudice unless stated otherwise, and the judgment in this case is silent on the issue. "It is well settled that a plaintiff who seeks and receives a voluntary dismissal of his action without prejudice usually cannot maintain or prosecute an appeal from the order of dismissal." Empire Volkswagen v. World-Wide Volkswagen, 814 F.2d 90, 94 (2d Cir.1987) (internal quotation marks and citation omitted); see also Chappelle, 84 F.3d at 654 (party precluded from appealing dismissal of some claims when balance of claims voluntarily dismissed without prejudice). Because such a plaintiff may reinstate his action regardless of the decision of the appellate court, permitting an appeal is clearly an end-run around the final judgment rule.
 
 
 28
 Palmieri relies on our statement in Empire Volkswagen that a plaintiff may "appeal from a voluntary dismissal when the plaintiffs' 'solicitation of the formal dismissal was designed only to expedite review of [a prior] order which had in effect dismissed [plaintiffs'] complaint.' " 814 F.2d at 94 (quoting Raceway Properties v. Emprise Corp., 613 F.2d 656, 657 (6th Cir.1980)) (brackets added by Empire Volkswagen ). Palmieri argues that, given the in limine evidentiary ruling and the reasoning behind it, "the District Court clearly would have determined the [remaining] record sales evidence to be not probative of access and insufficient as a matter of law after [Palmieri] rested." Palmieri thus concludes that (1) the ruling effectively dismissed his case, and (2) under the exception to the usual rule of non-appealability noted in Empire Volkswagen, he is entitled to appeal the in limine ruling. We are not persuaded by this argument, primarily because the district court expressly declined to take the position that arguably brings the Empire Volkswagen exception into play--that Palmieri's proof as a whole was insufficient as a matter of law. Moreover, all of the evidentiary rulings, including those decided against Palmieri, were subject to change at trial in the district court's discretion. Therefore, it cannot be said that Palmieri was faced with a nonappealable order effectively dismissing his case. Thus, if the dismissal here was a voluntarily dismissal under Rule 41(a), we decline to review the merits of the in limine ruling.
 
 B. Involuntary dismissal
 
 29
 The district court's dismissal can also be fairly regarded as based upon a failure to prosecute, and defendants so characterize it. It is somewhat ironic that defendants take this position because the scope of our review of an involuntary dismissal may be greater than our review of a voluntary one.
 
 
 30
 A district court may dismiss a claim with prejudice for failure to prosecute. See Zagano v. Fordham Univ., 900 F.2d 12, 15 (2d Cir.), cert. denied, 498 U.S. 899, 111 S.Ct. 255, 112 L.Ed.2d 213 (1990) (court may deny plaintiff's motion for voluntary dismissal and then dismiss for failure to prosecute). Such authority "is an inherent '... control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.' " Theilmann v. Rutland Hospital, 455 F.2d 853, 855 (2d Cir.1972) (quoting Link v. Wabash R.R. Co., 370 U.S. 626, 630-31, 82 S.Ct. 1386, 1388-89, 8 L.Ed.2d 734 (1962)). While we will review a dismissal for failure to prosecute, our review in such a case is limited to whether the dismissal was an abuse of the district court's discretion. Link, 370 U.S. at 633, 82 S.Ct. at 1390. "In order to properly appraise the exercise of discretion by the trial judge, we must carefully examine each case in its own factual circumstances." Michelsen v. Moore-McCormack Lines, 429 F.2d 394, 395 (2d Cir.1970).
 
 
 31
 Applying that standard, it is clear that Palmieri expressly refused to proceed to trial due to the district court's adverse in limine evidentiary ruling. Under the circumstances, the court had no real choice but to dismiss the case. See Spain v. Gallegos, 26 F.3d 439, 455 (3d Cir.1994); Zagano v. Fordham Univ., 900 F.2d at 15.
 
 
 32
 We will not review the in limine evidentiary ruling on the merits. Any purported error in the ruling could have been addressed at trial, and Palmieri willingly gave up this option. Cf. United States v. Miles, 889 F.2d 382, 384 (2d Cir.1989) (appellate court would not review pre-trial ruling where defendant failed to renew objection at trial and district court had informed counsel that pre-trial ruling was "for present purposes only"). The purpose of an in limine motion is "to aid the trial process by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial." Banque Hypothecaire Du Canton De Geneve v. Union Mines, 652 F.Supp. 1400, 1401 (D.Md.1987). Palmieri asks us to hold that an in limine evidentiary ruling is reviewable on the merits at the instance of the party offering the excluded evidence even though that party refuses to go to trial. If we did that, not only would we be faced with piecemeal appeals but also trial judges would be much more reluctant to grant these motions.
 
 
 33
 The district judge here continually showed his willingness to revisit all of his rulings depending upon how the evidence developed. For instance, Palmieri sought to introduce royalty statements issued by Broadcast Music, Inc., a national performing rights society which collects and pays royalties to writers and publishers for the public performance of musical compositions. Royalties are based on a formula that extrapolates an approximate amount of radio plays from a finite number of plays actually logged. Because Palmieri did not have a witness who would testify that there was a realistic relationship between the formula and actual radio plays, the district judge excluded the evidence. However, he made it clear that with such a witness, the evidence could be admissible. Compare Michelsen, 429 F.2d at 396 (dismissal not an abuse of discretion where plaintiff declined to present his case at all; if plaintiff had proceeded, district judge would have had basis for assessing importance of unavailable testimony) with Merker v. Rice, 649 F.2d 171, 175 (2d Cir.1981) (finding an abuse of discretion where it would have been "futile" for plaintiff to proceed with the trial already in process).
 
 
 34
 In this case, when Palmieri refused to go to trial he had evidence that approximately 40,000 copies of his song were sold nationwide, and over 2,000 were sold in the Miami area, where Gloria Estefan lives. He also had evidence that he was an important figure in the salsa music world and that Gloria Estefan and her husband were fans. And Palmieri was still uncovering additional evidence that bolstered his case. Palmieri's counsel stated at the hearing on the in limine motion that he had recently discovered another album that contained Palmieri's song and that approximately 20,000 copies of that album had been sold.
 
 
 35
 Thus, if we treat the district court's dismissal of the action as involuntary for failure to prosecute, the dismissal was not an abuse of discretion.
 
 
 36
 Finally, it may be that certain interlocutory orders merge into a final judgment for failure to prosecute and may be reviewed on the merits. Such a view could find support in two cases that neither party has cited to us: Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 903 F.2d 176 (2d Cir.1990) (reviewing denial of class certification after plaintiff's case was dismissed under Rule 41(b) for failure to prosecute its individual claim), cert. denied, 498 U.S. 1025, 111 S.Ct. 675, 112 L.Ed.2d 667 (1991) and Allied Air Freight v. Pan American World Airways, 393 F.2d 441 (2d Cir.) (reviewing grant of stay), cert. denied, 393 U.S. 846, 89 S.Ct. 131, 21 L.Ed.2d 117 (1968). But in Gary Plastic and Allied Air Freight, the prior order as a practical matter stopped the plaintiff's action altogether or could not be examined again at trial. As stated above, this is not such a case.
 
 
 37
 Palmieri made clear to the district court that he sought to appeal the in limine evidentiary rulings without proceeding to trial. However, under the circumstances, there was no course of action he could have taken that would have allowed this to occur. "By saying that he reserved the right to appeal, the plaintiff cannot thereby make appealable an order otherwise unappealable." Evans v. Calmar S.S. Co., 534 F.2d 519, 522 (2d Cir.1976).
 
 
 38
 Judgment affirmed.